UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>EDGAR MADDISON WELCH,<br><br>*Defendant.* | Case No. 1:16-<br><br>Honorable<br><br><u>UNDER SEAL</u> |

### AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

I, Justin Holgate, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.  I submit this affidavit in support of a criminal complaint charging EDGAR MADDISON WELCH ("WELCH") with one count of Transporting a Firearm with Intent to Commit an Offense or with Knowledge or Reasonable Cause to Believe that an Offense Would be Committed, in violation of 18 U.S.C. § 924(b).  As set forth further below, I respectfully submit that there is probable cause to believe that WELCH transported, across state lines from North Carolina to the District of Columbia, multiple loaded firearms, with intent to commit offenses that are punishable by more than one year in prison under the law of the District of Columbia, or with knowledge or reasonable cause to believe that such offenses would be committed, including violations of 22 D.C. Code § 402 (Assault with a Dangerous Weapon), 22 D.C. Code § 4504(a) (Carrying a Pistol Without a License), and 22 D.C. Code 4504(a-1) (Carrying a Rifle or Shotgun).

2. I am a duly appointed Special Agent of the Federal Bureau of Investigation (FBI) and have been employed as such since 2009. I am currently assigned to a squad which investigates violent crimes out of the FBI's Violent Crimes Task Force of the Washington, D.C. Field Office of the FBI. I have been assigned to this squad for more than six years. Prior to being appointed to the FBI, I served as a police officer in Little Rock, AR, for three years. During the course of my investigations of violent crimes, I have obtained arrest and search warrants and testified in Grand Jury and Trial proceedings. Through my employment with the FBI, I have gained knowledge in the use of various investigative techniques, including the utilization of physical surveillance, undercover agents, confidential informants and cooperating witnesses, consensually monitored recordings, investigative interviews, trash covers, financial investigations, the service of Administrative and Grand Jury Subpoenas, analyzing telephone pen register and caller identification system data, conducting court-authorized electronic surveillance and the execution of search and arrest warrants. Through instruction and participation in investigations, I have become familiar with the manner in which criminal offenders conduct their illegal business and the methods, language, and terms that are used to disguise conversations about their activities.

3. The information in this affidavit is based on my personal knowledge, information from other FBI agents, and information obtained from other law enforcement officers.

4. This affidavit is intended to show that there is sufficient probable cause for the requested warrant. It does not set forth every fact known to the government in connection with this investigation, nor does it set forth every fact known to me or other law enforcement agents.

2

**PROBABLE CAUSE**

Overview

5. On December 4, 2016, at approximately 3:00 p.m., an individual who later identified himself as Edgar Maddison Welch ("WELCH") walked into the "Comet Ping Pong" restaurant at 5037 Connecticut Avenue, N.W., Washington, D.C. WELCH was armed, displaying a loaded AR-15 assault rifle and carrying a loaded .38 caliber revolver. The restaurant was open and occupied by both employees and customers, including children.

6. WELCH entered the restaurant carrying the AR-15 across his chest, in a manner that instilled fear in everyone who saw him. As WELCH moved towards the back of the restaurant, customers and employees fled the building, fearing for their lives. While WELCH was inside the restaurant, he fired the AR-15 multiple times. Shortly after that, when an unaware employee walked through a rear door into the restaurant, WELCH turned towards the employee, such that his rifle was pointed in the direction of the employee, who immediately fled in fear.

7. As set forth further below, I respectfully submit that there is probable cause to believe that, on December 4, 2016, WELCH transported the above-listed firearms (as well as an additional shotgun) across state lines, from North Carolina to Washington, D.C., with intent to commit the offenses listed above, or with knowledge or reasonable cause to believe that the offenses listed above would be committed. As set forth below, WELCH appears to have been motivated, in part, by unfounded rumors concerning a child sex-trafficking ring that was being perpetrated by high-profile individuals at the Comet Ping Pong restaurant. According to evidence obtained from his cellphone, it appears that WELCH had been contemplating a violent

confrontation at the restaurant since at least December 1, 2016. The evidence from WELCH's cellphone also suggests that WELCH attempted to recruit at least two other people to join him.

Evidence Recovered From Welch's Cellphone

8. During a voluntary, post-arrest interview on December 4, 2016, WELCH told Washington, D.C., Metropolitan Police Department ("MPD") officers that he had left his cellphone inside his Toyota Prius, which had been parked outside the Comet Ping Pong restaurant. The following electronic evidence was from WELCH's cellphone, after officers obtained warrants to search WELCH's vehicle and cellphone.[1]

9. On December 1, 2016, while using his cellphone to visit a number of YouTube pages, WELCH sent a text message to his girlfriend, "M.R." WELCH indicated that he had been researching "Pizzagate" and that it was making him "sick." "Pizzagate" is a term commonly used to refer to the above-described rumors about a sex-trafficking ring at Comet Ping Pong.

10. During the next few hours after sending that text message, WELCH continued viewing YouTube pages on his cellphone. He also visited the Comet Ping Pong website.

11. Shortly after 8:00 p.m. on December 1, 2016, WELCH sent a text message to a friend, "B." The text message to B. included an internet link to a YouTube video. The text message also included the note, "Watch PIZZAGATE: The Bigger Picture on YouTube."

---

[1] The electronic evidence gathered from the cellphone is consistent with WELCH's ownership and use of the phone. This evidence includes text messages to and from the cellphone, user account data included within the phone, and pictures and videos recovered from the phone.

12. A few minutes later, WELCH received a phone call from another friend, "C." It is not clear whether or not WELCH actually spoke with C., but a few minutes after the phone call, WELCH and C. exchanged text messages. At about 8:28 p.m., C. texted WELCH, "Tell me we r going to save the Indians from the pipeline." WELCH responded, "Way more important, much higher stakes" and "Pizzagate." C. wrote, "Sounds like we r freeing some oppressed pizza from the hands of an evil pizza joint." WELCH replied, "Youtube tonight, talk in AM." At about 8:35 p.m., C. texted WELCH, "I'm in."

13. A few minutes later, WELCH sent a text message to B., asking B. to contact him so that they could drive together to C.'s residence in the morning. WELCH also asked B. to spend some time on YouTube before then. B. said he would contact WELCH in the morning.

14. On December 2, 2016, at about 2:58 p.m., WELCH texted C., asking whether C. wanted to meet, and whether C. had any Army buddies nearby. When C. indicated that he had one, WELCH asked, "he down for the cause?" C. said that it depended on the cause. WELCH responded: "Raiding a pedo ring, possibly sacraficing [sic] the lives of a few for the lives of many. Standing up against a corrupt system that kidnaps, tortures and rapes babies and children in our own backyard... defending the next generation of kids, our kids, from ever having to experience this kind of evil themselves[.]  I'm sorry bro, but I'm tired of turning the channel and hoping someone does something and being thankful it's not my family. One day it will be our families. The world is too afraid to act and I'm too stubborn not to[.]"

15. C. asked WELCH to call him, and they exchanged phone calls a few minutes later. A few minutes after that, WELCH texted M.R. that he was going to C.'s residence. B. also sent WELCH a text message indicating that he, too, would come to C.'s residence.

16. On December 4, 2016, at about 6:42 a.m., B. texted WELCH, asking WELCH to meet. After coordinating about the location, WELCH texted that he was "otw," or on the way. B. responded at about 6:52 a.m., "Hell moths Fucking yeq [sic]."

17. On December 4, 2016, at about 8:42 a.m., M.R. and WELCH began exchanging text messages which indicated that WELCH had left home while M.R. was sleeping, leaving his children alone with M.R. (who is not a parent of the children). M.R.'s text messages became increasingly concerned as the day progressed.

18. WELCH's phone also contained a video recording with the time stamp of 11:06 a.m. on December 4, 2016. The video appears to have been recorded while WELCH was driving. The phone camera was aimed at WELCH, who looked into the camera and told family members that he loved them; that he hoped that he had "showed it"; and that he hoped that he would be able to "tell [them] again." "And if not," he told them "don't ever forget it."

Offense Conduct in Washington, D.C.

19. A few hours later, at about 3:00 p.m. on December 4, 2016, WELCH arrived at the Comet Ping Pong restaurant. Witnesses saw WELCH enter the front door of the restaurant, carrying an assault rifle that he was holding across his chest, such that anyone who looked at WELCH would see the gun. Witnesses saw WELCH moved towards the rear of the restaurant

with the gun, but WELCH did not interfere with the employees and customers who, fearing for their lives, fled the building.

20.	At about the time that everyone else was running away from WELCH, restaurant employee CW-1 was retrieving dough from a freezer in an alley behind the restaurant. While CW-1 was outside by the freezer, CW-1 heard three loud bangs. Although CW-1 has stated that these loud noises were consistent with the sound of gunfire, at the time, CW-1 did not know what caused them. As such, CW-1 returned to the restaurant as he had intended.

21.	When CW-1 entered the restaurant, CW-1 encountered WELCH and saw that WELCH was carrying a rifle. CW-1 could see that WELCH saw CW-1. WELCH then turned with the AR-15 rifle such that it was pointing in the direction of CW-1. CW-1, fearing for his life, immediately fled the restaurant. CW-1 ultimately found MPD officers who had responded to the scene. CW-1 reported to the officers what had occurred inside the restaurant.

22.	When the first-responding police officers initially approached the restaurant, they encountered customers fleeing the restaurant through the main entrance. Officers observed multiple witnesses fleeing, and asked whether there were any additional customers inside the restaurant. One of the witnesses indicated that all of the customers had fled.

23.	The responding police officers created a perimeter around the restaurant, stopping traffic and escorting witnesses to a nearby firehouse for safety. At approximately 3:24 p.m., WELCH exited the front of the restaurant with his hands up in the air. Officers directed WELCH to keep his hands up in the air, walk backwards away from the restaurant, and expose his waistband (so that officers could determine whether WELCH was currently armed).

WELCH complied with these instructions, and then complied with further instructions to lay on the ground.  Officers then placed WELCH in handcuffs.  An officer asked whether WELCH had any weapons, and asked WELCH to describe their location.  At that time, WELCH told officers that he had an AR-15 and a .38 caliber revolver, and that both weapons were inside the restaurant.

24.     Officers conducted two show-up identification procedures with witnesses who had seen the armed man inside the restaurant.  Both witnesses identified WELCH as the armed man that they had seen inside the restaurant.

25.     After WELCH was detained, MPD officers entered and searched the restaurant.  During the search of the restaurant, officers recovered an AR-15 (which was loaded with one round of ammunition in the chamber and twenty-two rounds in the magazine) as well as a .38 caliber six-shot revolver (which was loaded with six rounds in the cylinder).  Officers also recovered spent shell casings and observed other physical evidence that was consistent with the audible evidence that WELCH had discharged the AR-15 multiple times inside the restaurant.

Statements by Welch

26.     WELCH was arrested and taken to the Second District for processing.  WELCH identified himself as Edgar Maddison Welch, of Salisbury, North Carolina.

27.     WELCH was advised of his right to remain silent under *Miranda v. Arizona*.  WELCH acknowledged that he understood his right to remain silent and to counsel.  WELCH then voluntarily waived his right to remain silent and provided a statement.

28. WELCH stated that he had learned about "news" reports concerning a child sex trafficking ring that was being conducted in hidden rooms at the Comet Ping Pong restaurant, which allegedly involved high-profile individuals. WELCH said that he had read these reports on the internet, heard about the reports from other people, and heard about them on the radio. WELCH claimed that he had decided to "investigate" these reports on his own. WELCH said that this was why he had decided to visit the Comet Ping Pong restaurant.

29. WELCH said that, for that reason, he got into his car at approximately 9:00 a.m. that morning and drove from his home in North Carolina, straight to the Comet Ping Pong restaurant in Washington, D.C. WELCH said that, while he was driving from North Carolina to the Comet Ping Pong restaurant, he used his cell phone to communicate with family members about his travel to Washington, D.C. WELCH said that, while he was driving, he told his girlfriend words to the effect that he "might be gone awhile."

30. WELCH said that he parked his car outside the restaurant and walked towards the entrance. WELCH said that he entered the restaurant armed, carrying an assault rifle, and said that he also had a .38 revolver in a holster on his hip. WELCH said that he entered the restaurant with the rifle openly displayed and pointed downwards. WELCH stated that, while he was in the restaurant, he searched for evidence of hidden rooms or tunnels, or child sex-trafficking of any kind. WELCH stated that, at one point, he encountered a locked door. When he was unable to open the door, WELCH became suspicious and attempted to force it open with a butter knife, and then by shooting the lock. WELCH said that he fired shots at the lock using his AR-15. WELCH said that, when that also proved unsuccessful, he climbed furniture to look into the

closed-off room, and found that it was unoccupied.  WELCH also described encountering an employee who entered from the rear of the restaurant, consistent with CW-1.  WELCH admitted turning towards the employee with the "AR" in his hands.  When asked, WELCH denied raising the AR-15 at the employee.

31.     WELCH claimed that, after he found no evidence of child sex-trafficking, he exited the restaurant and surrendered himself to police officers that were already on-scene.

32.     WELCH admitted to having an additional loaded shotgun in his vehicle, as well as ammunition.  MPD officers later obtained a search warrant to search WELCH's vehicle, which is a Toyota Prius bearing North Carolina license plates.  When that warrant was executed on December 5, 2016, law enforcement technicians recovered the above-mentioned shotgun (which was loaded with four live rounds of ammunition) from the rear hatchback area of the vehicle, together with a box containing fourteen additional rounds of ammunition.

## CONCLUSION

33.     Based on the foregoing, I respectfully submit that there is probable cause to believe that WELCH has committed the offense of Transporting a Firearm with Intent to Commit an Offense, or with Knowledge or Reasonable Cause to Believe that an Offense Would be Committed, in violation of 18 U.S.C. § 924(b), in that WELCH transported, across state lines from North Carolina to the District of Columbia, multiple loaded firearms, with intent to commit offenses that are punishable by more than one year in prison under the law of the District of Columbia, or with knowledge or reasonable cause to believe that such offenses would be committed, including violations of 22 D.C. Code § 402 (Assault with a Dangerous Weapon), 22

D.C. Code § 4504(a) (Carrying a Pistol Without a License), and 22 D.C. Code 4504(a-1) (Carrying a Rifle or Shotgun).

                                            Respectfully Submitted,

                                            _____
                                            Justin Holgate, Special Agent
                                            Federal Bureau of Investigation

Subscribed and sworn before me this _____ day of December, 2016

_____
Honorable G. Michael Harvey
United States Magistrate Judge
District of Columbia

11