**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** <br><br> v. <br><br> **EDGAR MADDISON WELCH,** <br><br> *Defendant.* | Case No. 1:16-MJ-847 (GMH) <br><br> Honorable G. Michael Harvey |

**GOVERNMENT'S MEMORANDUM IN SUPPORT OF PRE-TRIAL DETENTION**

The government respectfully moves this Court to issue an Order detaining the defendant without bond. At the defendant's initial appearance, the government requested that the defendant be held because (1) he presents a danger and (2) he presents a risk of flight.

**I.   Legal principles governing requests for detention.**

The Bail Reform Act lists four factors that guide a court's pre-trial detention decision: (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug, (2) the weight of the evidence against the person, (3) the history and characteristics of the person, and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. See 18 U.S.C. § 3142(g). A judicial determination that a defendant should be detained pending trial on the ground of community safety must be supported by clear and convincing evidence. *United States v. Smith*, 79 F.3d 1208, 1209 (D.C. Cir. 1996). When "risk of flight" is the basis for detention, the government must satisfy a preponderance of the evidence standard. *United States v. Xulam*, 84 F.3d 441, 442 (D.C. Cir. 1996).

Under 18 U.S.C. § 3142(f)(1), a person may be preventatively detained pending trial when he is charged with a "crime of violence." *See* 18 U.S.C. § 3142(f)(1)(A). 18 U.S.C.

§ 3156(a)(4)(A) defines a crime of violence as "an offense that has an element of the offense, the use, attempted use, or threatened use of physical force against the person or property of another." The defendant is charged via Count One of the indictment with violating 18 U.S.C. § 924(b), Transporting a Firearm with Intent to Commit Offenses or with Knowledge or Reasonable Cause to Believe that Offenses Would Be Committed ("Transporting a Firearm"), those offenses being Assault with a Dangerous Weapon, Carrying a Pistol Without a License, and Carrying a Rifle or Shotgun (rifle), all of which are punishable by more than one year in prison. The defendant is also charged in Counts Two and Three with violating 22 D.C. Code § 402, Assault with a Dangerous Weapon, and with violating 22 D.C. Code § 4504(b), Possession of a Firearm During Commission of a Crime of Violence ("PFCOV"), that crime being Assault with a Dangerous Weapon. The D.C. Code offense of Assault with a Dangerous Weapon is a crime of violence. The crimes of Transporting a Firearm and PFCOV are crimes of violence where, as here, they involve the predicate offense of Assault with a Dangerous Weapon.

Under 18 U.S.C. § 3142(f)(1), a person may also be preventatively detained when he is charged with "any felony that is not otherwise a crime of violence . . . that involves the possession or use of a firearm or destructive device (as those terms are defined in section 921), or any other dangerous weapon." The charges against the defendant in this case all involve "possession or use of a firearm." 18 U.S.C. § 3142(f)(1)(E).

Finally, under 18 U.S.C. § 3142(f)(2)(A), a person may be preventatively detained when he presents a risk of flight.

**II.     Factual proffer of the evidence supporting the charge against the defendant.**

On December 4, 2016, the defendant transported three loaded firearms (together with additional ammunition) across state lines, from North Carolina to Washington, D.C. The firearms

included a 9mm AR-15 assault rifle loaded with approximately 29 rounds of ammunition, a fully-loaded 6-shot .38 caliber revolver, and a loaded shotgun and additional shotgun shells. The defendant drove directly from North Carolina to the Comet Ping Pong ("Comet") restaurant on Connecticut Avenue in Washington, D.C. The defendant was motivated, at least in part, by unfounded rumors concerning a child sex-trafficking ring that was being perpetrated by high-profile individuals at Comet. The defendant took it upon himself to act, contemplating a violent confrontation at the restaurant. He attempted to recruit at least two other people to join him, explaining to them that they would be "sacraficing [sic] the lives of a few for the lives of many," and "[s]tanding up against a corrupt system that kidnaps, tortures and rapes babies and children in our own backyard." During the journey from North Carolina to Washington, D.C., at about 1:06 p.m., the defendant sent a text message to friends, asking whether they would take care of his family, "if anything happens to" him. Upon arriving at the Comet restaurant, the defendant parked his car and armed himself. At about 3:00 p.m, he marched into the restaurant, which was occupied by employees and customers, including children. The defendant knew that the restaurant was open; he knew that there were people inside; and he continued in.

When the defendant entered the restaurant, he was carrying the AR-15 assault rifle that was loaded with approximately 29 rounds of ammunition. He was also carrying the fully-loaded .38 caliber Colt revolver. The defendant carried his AR-15 across his chest, such that it was openly displayed for anyone in the restaurant to see, allowing the defendant to move directly to the back of the restaurant without any interference. The customers and employees of the restaurant feared for their lives, did not interfere with the defendant, and fled the building. At one point, the defendant encountered a locked room and attempted to force open the door, first using a butter knife, and then discharging his assault rifle into the door. The defendant told detectives that he

fired twice and thereby broke one of the locks for the door.  However, investigating officers later recovered four shell casings (consistent with four shots) as well as physical evidence that, in addition to the door lock, bullets struck and damaged a computer in the locked room (which was used for storage).

A few moments later, CW-1, an unaware employee, entered the restaurant carrying pizza dough through a door that was a short distance from the defendant.  The defendant saw CW-1, turned with the assault rifle such that the rifle was pointed in the direction of CW-1, and in such a manner that CW-1 immediately feared that he would be shot.  CW-1 fled for his life.  The defendant was thus left alone in the restaurant.  After spending over twenty minutes inside the restaurant, the defendant left his firearms in the restaurant and exited the restaurant unarmed.

During a subsequent search of the restaurant, officers recovered the 9mm AR-15 (which was loaded with one round of ammunition in the chamber and twenty-two rounds in the magazine) as well as the .38 caliber six-shot revolver (which was loaded with six rounds in the cylinder) and an accompanying holster.  The officers also recovered four shell casings (as noted above), two live rounds of 9mm ammunition, and various bullet fragments.  A shotgun was also recovered from the defendant's car, together with a box of shotgun ammunition.  The shotgun was loaded with four live rounds of ammunition, and also contained one spent casing.

**III.   The defendant should be detained.**

Under the factors set forth in 18 U.S.C. § 3142(g), the government will demonstrate that the defendant presents both a danger a risk of flight.

  **A.   The Nature and Circumstances of the Offense(s)**

In short, the crimes the defendant has been charged with are serious within the meaning of § 3142(g)(1). By its express terms, § 3142(g)(1) focuses on "the nature and circumstances of the

offense charged, including whether the offense is a crime of violence, a Federal crime of terrorism, or involves a minor victim or controlled substance, firearm, explosive, or destructive device." 18 U.S.C. § 3142(g)(1) (emphasis added).  The offenses charged are crimes of violence because each offense has as an element the use, attempted use, or threatened use of physical force against the person or property of another or is predicated upon an offense (i.e., Assault with a Dangerous Weapon) that has such an element.  *See* 18 U.S.C. § 16(a).  Furthermore, the defendant is alleged to have discharged a firearm during the commission of the offenses.

In addition, the D.C. Code violations of Assault with a Dangerous Weapon and PFCOV are considered "crimes of violence" under District of Columbia law.  Indeed, where (as here) there is probable cause to believe that a defendant has committed those crimes while armed with or having readily available a pistol, under District of Columbia law there is "a rebuttable presumption that no condition or combination of conditions of release will reasonably assure the safety of any other person and the community."  *See* 22 D.C. Code § 1322(c)(1).

A consideration of the nature and circumstances of the offenses also requires the Court to weigh the possible penalty the defendant faces upon conviction.  *See United States v. Townsend*, 897 F.2d 989, 995 (9th Cir. 1990).  Here, the seriousness of the defendant's crimes is reflected in the possible sentence he would face if convicted.  If defendant is convicted of an offense under 18 U.S.C. § 924(b), 22 D.C. Code § 402, and 22 D.C. Code § 4504(b), the maximum total sentence of imprisonment would be 35 years.  *See, e.g., United States v. Geerts*, 629 F. Supp. 830 (E.D. Pa. 1985) (defendant facing prospect of 50 years of incarceration was a risk of flight).  On the PFCOV charge alone, the defendant faces a mandatory minimum term of five years, if convicted.

**B.     The Nature and Seriousness of the Danger to Any Person or the Community that Would be Posed by the Defendant's Release**

The defendant has demonstrated a willingness to ignore the law and to use force for his own ends.  The defendant has shown – by his conduct as well as his text messages to associates – that he was not averse to placing the lives of people in danger.  In fact, based on a video message that the defendant recorded while driving, the defendant knowingly charged across state lines for the purposes of a confrontation that may have cost him his own life.  When he arrived at a peaceful restaurant that Sunday afternoon, he saw that people, including children were eating and relaxing.  But that did not stop him.  He did not put aside his assault rifle.  He entered the restaurant with his assault rifle, putting the fear of death into everyone inside.  He discharged his weapon and thereby destroyed private property.  Then, when he encountered an innocent employee, he turned towards the employee with his assault rifle, immediately causing CW-1 to believe that he could be shot.

**C.     The Weight of Evidence Against the Defendant**

The evidence against the defendant is very strong.  His conduct in the restaurant was viewed by numerous witnesses; there is no question of identification; he made admissions to detectives in a video-recorded interview; the guns and ammunition were recovered with physical evidence that the gun had been fired inside the restaurant; and evidence recovered from his phone demonstrates his intent and the degree to which he was willing to endanger the lives of others.

**D.     The History and Characteristics of the Defendant**

The defendant's characteristics demonstrate his danger and risk of flight.  The history and characteristics of a person include, "the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings."  18 U.S.C. § 3142(g)(3)(A).  The defendant brought an assault

rifle to a pizza restaurant, placing employees, customers, and children in danger. Earlier, he attempted to recruit others to join him. He also expressed and showed a willingness even to endanger his own life. He travelled hundreds of miles to commit these crimes; he has no means to support himself in the District of Columbia; and he has no contacts with this community.

IV. **Conclusion.**

For the foregoing reasons, as well as those that will be set forth at a hearing on this motion, the government respectfully submits that there exists no condition or combination of conditions which would assure the return of this defendant to all future court appearances and the safety of any person or the community. Accordingly, the government requests that the Court order the pre-trial detention of the defendant.

Respectfully submitted,

CHANNING D. PHILLIPS
UNITED STATES ATTORNEY
D.C. Bar Number 415793

By: \_\_\_\_/s/_____
DEMIAN S. AHN
Assistant United States Attorney
D.C. Bar Number 49111
United States Attorney's Office
555 4th Street NW
Washington, D.C. 20530
Tel. No.: (202) 252-7106
E-mail: demian.ahn@usdoj.gov

SONALI D. PATEL
Assistant United States Attorney
N.Y Bar Number 4844049
United States Attorney's Office
555 4th Street NW
Washington, D.C. 20530
Tel. No.: (202) 252-7032
E-mail: sonali.patel@usdoj.gov