**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| v. | Case No. 16-CR-232 (KBJ) |
| **EDGAR MADDISON WELCH,** | |
| *Defendant.* | |

### RESPONSE TO DEFENDANT'S SENTENCING MEMORANDUM

The United States, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this Response to the Defendant's Sentencing Memorandum.

### INTRODUCTION

The defendant's handwritten letter, the centerpiece of his Sentencing Memorandum, broadly asserts that it was "never [his] intention to harm or frighten innocent lives," and that he acted "without taking the time to consider the [repercussions] of [his] actions." The uncontradicted evidence shows otherwise. The evidence – the defendant's own words, in black and white, as well as the accounts of his girlfriend and his close friend – makes clear that the defendant actually planned for the "sacrifice" of "the lives of the few" in service of his misguided cause, and that he deliberately and repeatedly rejected impassioned appeals to stop what he was doing.

The defendant considered the consequences of his actions for three days before he fired his assault rifle inside Comet Ping Pong ("Comet"). He debated the plan with his girlfriend, W-8. He argued about the merits of his mission with his close friend, W-6. He rejected advice that he should use a camera instead of a gun. Finally, he decided that the ends justified the means; he armed himself for a confrontation with non-existent criminals; and he terrorized innocent families and employees who were just trying to enjoy their Sunday afternoon at a neighborhood restaurant.

**ARGUMENT**

The government respectfully submits that, in light of the defendant's planned and actual commission of a crime of violence, the need to deter the defendant and other would-be vigilantes, the impact of the defendant's offenses, and the need to promote respect for the law, the defendant's requested low-end sentence is inappropriate in this case.  The government further submits that, taking into account all of the sentencing factors set forth under 18 U.S.C. § 3553(a) and D.C. Code § 24-403.01(a), a significant – yet still effectively mid-range – sentence of 54 months in prison is necessary to serve the ends of justice in this case.

### 1. The Nature and Circumstances of the Offense

The defendant deliberated and debated his planned assault at Comet for three days, and he ultimately concluded that the potentially deadly consequences were justified by his YouTube feed. He ignored repeated pleas from his girlfriend – both on Thursday, December 1, 2016, and Sunday, December 4, 2016 – that he should not to anything "stupid," and that emphasized her view of his "selfish … adventure."  Exhibit G.  He was determined to risk his life, as shown by the video messages (Exhibit I) and text messages (Exhibit G) during his drive to Comet, and the lives of others (Statement of Offense), because he believed the consequences were worth it.

The fact that the defendant's handwritten letter tells a different story is troubling.  To his credit, the defendant has accepted legal responsibility for his actions and he appears to have expressed sincere regret towards the affected community.  However, in his letter to the Court, he minimizes his conduct with misleading suggestions that he never intended to risk other people's lives and that his actions were based on a failure to consider the "repercussions."  The defendant's attempt to re-characterize his conduct suggests that he does not fully comprehend his wrongdoing.

### 2. The History and Characteristics of the Defendant

The government does not dispute that the defendant is a loving father and devoted member of his family, or that the defendant has a deep religious faith, or that he has shown great kindness to friends and people in his community.  The government also credits the submissions indicating that, during a three-week period in 2010, the defendant showed unusual kindness and charity as a volunteer in the aftermath of a terrible earthquake Haiti.  However, nothing in the defendant's conduct during that period, and none of the other vaguely-described good works in the defendant's submission, warrants a sentence at the low-end of the applicable guidelines range for either count in this case.  The cases in the defendant's Sentencing Memorandum, which primarily involved convictions for tax evasion and fraud (not crimes of violence), are not comparable to this case. See, e.g., United States v. Warner, 792 F.3d 847, 857 (7th Cir. 2015) (tax evasion case where the government recommended a below-guidelines sentence and court found "unprecedented" good works, including over $70 million in charitable donations, as well as other personal good works); United States v. Cooper, 394 F.3d 172 (3d Cir. 2005) (fraud and tax case where defendant demonstrated decades of "hands-on personal sacrifices," directly engaging in the lives of underprivileged children for several years at a time); United States v. Mehta, 307 F. Supp. 2d 270 (D. Mass. 2004) (fraud and tax case in which the sentencing judge wrote about the defendant's charitable works, "I can say without equivocation that if Mehta's situation did not meet the standard [for a charitable works departure], no one could," where defendant helped to build a community for adherents of Jainism in America; served as a mentor to first generation Indian immigrants; and volunteered extensively in the Boston area and in India, including activities at local homeless shelters and help to complete strangers); United States v. Greene, 249 F. Supp. 2d 262 (S.D.N.Y. 2003) (tax case involving the preparation of thirty-nine false tax returns in which the defendant served as a foster parent for many years and adopted six high-risk foster children,

including one child with severe physical and mental disabilities). Though the defendant is by all accounts an upstanding member of his community, one who appears to care deeply for others, his charitable works do not rise to the level that have warranted a departure in other cases, nor do they warrant a sentence at the low-end of the guidelines here.

### 3. The Need to Promote Respect for the Law, to Provide Just Punishment, to Afford Adequate Deterrence, to Protect the Public

The government submits that a significant sentence is required to promote respect for the law, provide just punishment, afford adequate deterrence, and protect the public. The defendant committed a crime of violence that was driven, in significant part, by his lack of respect for the law and the role of law enforcement. His conduct thus not only victimized the people in the restaurant and the surrounding community, but also the rule of law itself. Indeed, in the immediate aftermath of his offense, others were motivated or inspired by defendant's conduct to engage in criminal behavior – to pursue the same vigilante goals as the defendant. A sentence at the low-end of the sentencing guidelines, in particular after the defendant's post-hoc attempt to minimize his conduct, would not sufficiently promote respect for the law, protect the public, or deter other people from pursuing the same kind of dangerous vigilante strategy employed by the defendant.

Nor would the defendant's proposed sentence provide for sufficient punishment in this case, particularly in light of the defendant's extended deliberations over the crime, the defendant's lack of mitigating personal circumstances in his upbringing or adulthood, and the defendant's lack of psychiatric diagnoses that might otherwise have played a role in his conduct. The government does not doubt that it is very difficult for the defendant to be separated from his children, but that will not distinguish the defendant's sentence from that imposed on anyone else with children. Finally, while the defendant spent a short time in solitary confinement during the pendency of this case, those five weeks do not warrant a sentence at the low-end of the guidelines in this case.

There have been cases where sentencing courts have imposed lesser sentences based on periods of solitary confinement (or other conditions of confinement), but the circumstances in those cases were quite different from those faced by the defendant in this case. Those cases involved conditions that were "extreme to an exceptional degree and their severity [fell] upon the defendant in some highly unique or disproportionate manner." United States v. Mateo, 299 F. Supp. 2d 201, 208-212 (S.D.N.Y. 2004) (granting a departure for a defendant who was sexually abused by a prison guard and who gave birth without medical attention while awaiting sentencing). See United States v. Sutton, No. 07-426, 2007 WL 3170128 (D.N.J. Oct. 25, 2007) (defendant had been housed for seven months in a facility where he faced extreme overcrowding, unsanitary and unsafe conditions, and use of canine units to move prisoners); United States v. Francis, 129 F. Supp. 2d 612 (S.D.N.Y. 2001) (defendant had been the victim of an attempted slashing and was not moved even after a court order that the defendant be transferred to a different prison had not been obeyed for nine months, and defendant suffered from weight loss, stress, insomnia, depression, and fear as a result); United States v. Noriega, 40 F. Supp. 2d 1378 (S.D. Fl. 1999) (reducing a 40 year sentence to 30 years for a number of reasons, including the fact that the defendant, the former Commanding General of the Panama Defense Force, had been in near-solitary confinement for over nine years). Though the defendant was in solitary confinement in this case, that was for a limited five-week period and, as the letter by the defendant's mother shows, during his time in jail the defendant has also been able to engage in productive activities, including leading a Bible study group with other inmates.

Although the defendant has certainly found incarceration to be difficult, there is no evidence that the defendant has faced circumstances that are particularly unusual or unique, and none of the conditions of his pretrial detention justify a reduced punishment.

### 4. The Need to Avoid Unwarranted Sentence Disparities

The government's proposed sentence would not result in any unwarranted sentence disparities. The defendant committed a serious crime of violence that significantly impacted the lives of numerous victims, and the government's proposed mid-range sentence accounts for his acceptance of responsibility and his lack of a significant criminal history. The defendant's cited cases do not show otherwise. First, unlike the cases cited in the defendant's Sentencing Memorandum, this case cannot properly be characterized as "involve[ing] the use of firearms and confrontation with law enforcement," Sentencing Memorandum at 18. The defendant left his home in North Carolina intent on a violent confrontation against non-existent criminals and real-life individuals who were actually innocent of any crime; as intended, the defendant actually carried out an armed invasion of a crowded restaurant; the defendant fired an assault rifle multiple times into a thin wooden door, not knowing whether anyone was behind it; and he threatened an innocent Comet employee by pointing a loaded assault rifle at him. The defendant's conduct is nothing like that in United States v. Dawson, 1:16-CR-151, or United States v. Olivieri, 1:16-CR-135. Those cases appear to have involved something close to attempted suicide, rather than assaultive conduct that was purposefully aimed at other people. The defendant in Dawson pointed an imitation firearm at U.S. Capitol Police Officers; the defendant in Olivieri fired a shot in an unknown direction, then walked towards U.S. Secret Service Officers with a gun pointed down. Moreover, the defendants in Dawson and Olivieri both suffered from diagnosed mental illnesses. The defendant in Dawson suffered from hallucinations, was likely schizophrenic, and had a diagnosis sufficient to require anti-psychotic medications. Similarly, the defendant in Olivieri had prior diagnoses for paranoid schizophrenia, required anti-psychotic medications, and had been found legally insane in connection with prior criminal charges. The defendant in this case suffers

from no similar conditions, and has no similar medical history, that would lessen his criminal culpability or require medical treatments that would affect the need for punishment. Finally, in both Dawson and Olivieri, the defendants themselves had suffered gunshot wounds during the course of their offenses, and those wounds constituted significant mitigating factors. In fact, the defendant in Olivieri suffered a nearly-fatal gunshot wound that required continued hospitalization even on the date of sentencing, and the treating physician predicted that the defendant's recovery would require additional surgeries and take between 1 ½ and 2 years. In each case, the gunshot wounds suffered by the defendants were both part of their punishment, and in the Olivieri case, the defendant required continued medical treatment that was difficult to reconcile with incarceration. None of those circumstances are present here.

## **CONCLUSION**

For all of the foregoing reasons, and as set forth in the government's initial Sentencing Memorandum, the government respectfully requests that the Court sentence the defendant to 24 months in prison for Count One and 54 months in prison for Count Two. The government further requests that the Court sentence the defendant to three years of supervised release, to pay restitution for property damage suffered by Comet, and to pay the required special assessments of $100 costs each for both Counts One and Two.

Respectfully submitted,

CHANNING D. PHILLIPS
UNITED STATES ATTORNEY
D.C. Bar Number 415793


By: ____/s/_____
DEMIAN S. AHN
Assistant United States Attorney
D.C. Bar Number 49111
United States Attorney's Office
555 4th Street NW
Washington, D.C. 20530
Tel. No.: (202) 252-7106
E-mail: demian.ahn@usdoj.gov

SONALI D. PATEL
Assistant United States Attorney
N.Y Bar Number 4844049
United States Attorney's Office
555 4th Street NW
Washington, D.C. 20530
Tel. No.: (202) 252-7032
E-mail: sonali.patel@usdoj.gov